714 P.2d 86

**STATE of Idaho, Plaintiff-Respondent,**

v.

**Robert D. FREEMAN,
Defendant-Appellant.**

**No. 14752.**

Court of Appeals of Idaho.

Jan. 30, 1986.

Mark A. Jackson, Coeur d'Alene, and Malcolm S. Dymkoski, Post Falls, (Kootenai County Public Defender's Office) for defendant-appellant.

Jim Jones, Atty. Gen., Lynn E. Thomas, Sol. Gen., Myrna A.I. Stahman, Deputy Atty. Gen., for plaintiff-respondent.

SWANSTROM, Judge.

Robert Freeman pled guilty to two counts of lewd and lascivious conduct with children under sixteen years of age. The district court imposed consecutive sentences in the custody of the Board of Correction for an indeterminate term not to exceed twenty years on one count, and an indeterminate term not to exceed ten years on the other count. Freeman presents three issues on appeal: (1) whether the district court erred in denying his motion to withdraw the guilty pleas; (2) whether he was denied the effective assistance of counsel; and (3) whether the sentence imposed was excessive. We affirm.

Freeman initially was charged with seven counts of lewd and lascivious conduct committed upon three females under the age of sixteen. On Monday, the day the trial was to commence, Freeman pled guilty to two counts and the others were dismissed. The pleas were accepted by the court, the jury panel was excused, and a presentence investigation was ordered. The resulting report recommended long-term incarceration.

The sentencing hearing began by Freeman moving to withdraw his guilty pleas. He claimed to have no memory of entering the pleas and little memory of the weekend proceeding their entry. His attorney explained this turn of events as follows:

> Your Honor, one of the reasons that I had Dr. Farley accompany me on Saturday [before the guilty pleas were entered], which Mr. Freeman mentioned, was in order to judge for myself and then pose that question to Dr. Farley. In my own mind, at the time the trial was set and the plea was entered, I would not have allowed a plea to be entered if I thought it was factually not supported

and that he didn't know—Mr. Freeman didn't know—what he was doing; and that's the reason Mr. Farley was gracious enough to meet with Mr. Freeman on Saturday. And he met with him, and I met with Dr. Farley afterwards; and that was the Saturday preceding the court appearance on Monday.

However, Mr. Freeman, on his own desire, has told me that he wishes to inform this Court of his intention to withdraw his plea; and I state that 'cause he's indicated that that is his intention. I discussed with him some of the problems in so doing it, and also discussed with him the problem of the basis for that.

. . . .

He's instructed me to present that motion to the Court, but I don't have any basis, frankly, myself, of saying he did not know what he was doing.

The court requested that Dr. Farley, who was present for the sentencing hearing, testify regarding Freeman's state of mind. Dr. Farley, a clinical psychologist, had visited Freeman on Saturday, two days before the trial was to begin. He stated that Freeman was able to understand his actions, and expressed surprise that Freeman could not remember entering the pleas. Freeman's attorney made no attempt to keep Dr. Farley's testimony out of the hearing. The court denied the motion to withdraw the pleas and proceeded directly into the sentencing hearing.

Freeman first contends that his guilty pleas were not knowingly, intelligently and voluntarily made. He asserts that he did not know what he was doing when he entered the pleas; that he was confused and pressured into pleading guilty by the district court, which had a jury waiting; and that he was pressured by his own attorney who had not subpoenaed certain witnesses he desired to call at trial.

To be valid, a guilty plea must be made voluntarily, knowingly and intelligently. *State v. Colyer*, 98 Idaho 32, 557 P.2d 626 (1976). The record, and reasonable inferences drawn therefrom, must show that the plea was voluntary, that the defendant understood the consequences of a guilty plea and that he knowingly and intelligently waived his constitutional rights to a jury trial, to confront his accusers, and to refrain from self-incrimination. *Id.; State v. Howell*, 104 Idaho 393, 659 P.2d 147 (Ct.App.1983).

On the morning of trial, Freeman expressed a willingness to plead to one count of lewd and lascivious conduct. He moved to have the other counts, involving two other girls, dismissed under I.C.R. 48 "in the interests of justice." Freeman did not profess his innocence of all the other charges, rather he said he wanted one of those charges dismissed so that the girl involved would never bear feelings of guilt for his conviction and incarceration. He argued that his punishment would not be materially affected whether he pleaded to one or more counts, since the court could sentence him to life imprisonment in either event. The prosecutor resisted the motion, contending that the defendant was trying to extend plea negotiations that were already closed and to involve the court in those negotiations. The court agreed, denied the motion and stated that the scheduled trial would proceed. Freeman then stated he did not have all the witnesses he needed for trial. The court noted that Freeman had been given plenty of time to subpoena witnesses. Neither Freeman nor his attorney requested a continuance to procure the witnesses. Freeman then indicated he would plead to two counts. A recess was taken so Freeman and his counsel could confer. Following the recess, the court questioned Freeman further and accepted guilty pleas to the two counts involved in this appeal. Freeman contends now that being forced to trial without his witnesses constituted judicial coercion for him to pled guilty. We do not agree.

There is no showing in the record of the sentencing hearing that the absence of any essential witnesses played a significant part in Freeman's decision to plead guilty. What is apparent is that Freeman's counsel disagreed with Freeman about the necessity and advisability of calling certain wit-

nesses. Counsel was justifiably reluctant at that point to discuss witnesses' potential testimony and trial strategy. He did indicate that he had discussed the need for certain witnesses with Freeman and that he was prepared to go forward with the trial if the court so decided.

It is clear from the record—as the judge later found—that Freeman fully understood "the overwhelming nature of the evidence that the prosecution had to present against him." That, and a strong desire to avoid having the children endure the ordeal of trial, were the principal factors in Freeman's decision to plead guilty. After a careful examination into all of the circumstances surrounding the entry of the pleas, the court found that the pleas were freely, voluntarily and knowingly made. We hold that the court committed no error in accepting the guilty pleas.

Freeman relies on Idaho Criminal Rule 33(c) and *State v. Jackson,* 96 Idaho 584, 532 P.2d 926 (1975), to contend that the district court abused its discretion by denying Freeman's motion to withdraw the guilty pleas. Whether to grant a motion to withdraw a guilty plea lies in the discretion of the district court and such discretion should be liberally applied. *State v. Jackson, supra; State v. Raponi,* 32 Idaho 368, 182 P. 855 (1919). Review of a denial of a plea withdrawal is limited to the question of whether the district court exercised sound judicial discretion as distinguished from arbitrary action. *State v. Jackson, supra; State v. Raponi, supra.* Also of importance is whether the motion to withdraw a plea is made before or after sentence is imposed. I.C.R. 33(c) allows a plea to be withdrawn after sentencing only to correct manifest injustice. The stricter standard after sentencing is justified to insure that the accused is not "encouraged to plead guilty to test the weight of potential punishment and withdraw the plea if the sentence were unexpectedly severe." *State v. Jackson,* 96 Idaho at 588, 532 P.2d at 930 (quoting *Kadwell v. United States,* 315 F.2d 667, 670 (9th Cir.1963)).

Freeman contends that because he moved to withdraw his pleas before sentencing, the district court abused its discretion by denying the motion. To properly exercise its discretion the district court should identify conflicting factors bearing on the issues and reach a decision based on a well-reasoned consideration of those factors. *State v. Howell, supra.* Stating these factors on the record aids exercise of this discretion and provides a basis for the appellate court to decide if there has been an exercise of judicial discretion or arbitrary action. *State v. Howell, supra; State v. Jackson, supra.* The district judge stated sound and comprehensive reasons in this case.

Freeman's abuse of discretion claim fails for two reasons. First, the facts of this case do not fall into the *Jackson* holding. *Jackson* was premised on (1) a motion to withdraw a plea before sentencing and (2) a conditional plea. The defendant refused to admit committing the acts constituting the crime. Freeman, on the other hand, entered unconditional pleas. He was informed that a guilty plea would be considered an admission to the truth of the charges. He indicated he understood this, and then went on to specifically admit committing the acts constituting the charges.

Secondly, even though Freeman moved to change his plea prior to sentencing, he did so only after reviewing the presentence report. Judge Prather identified this as one of the factors bearing on his decision to deny the motion. He ruled that where a defendant sees the presentence report prior to moving to change his plea, the court is not bound by the liberal discretion rule. We agree to the extent that where, as here, a defendant seeks to withdraw his plea after reviewing a presentence report recommending lengthy incarceration the judge may weigh this factor in deciding whether to allow a guilty plea to be withdrawn. *See State v. Howell, supra.*

Freeman pled guilty on June 14, 1982. The presentence report was filed with the district court on July 15. The sentencing hearing was held on July 26 and 27, at

which time Freeman moved to withdraw his pleas. The record does not disclose when Freeman first saw the presentence report, but it is apparent that at least a month passed from plea to presentence report. The report recommended prison. The investigator stated that rehabilitation would be possible only by a "long period of treatment in a highly structured facility," and noted that the court might wish to consider a fixed sentence.

Freeman further contends that abuse of discretion is shown by the district court's failure to follow-up on a statement made by Freeman immediately following denial of the motion to withdraw his plea. Quoting from the record:

THE COURT: Mr. Freeman, let me ask you at this time: Do you have any reason to state, as a matter of law, why sentence should not now be pronounced? MR. FREEMAN: I don't know that much about the law. I asked for a change of plea about three days after I had made my plea. I had no knowledge of the P.S.I. at all at that time that I asked for the change of plea.

■ Unfortunately the record is otherwise devoid of reference to Freeman's change of mind or whom he "asked." If indeed he did ask for a change of plea just three days later, the strict standard used by the district court for denying the motion was inappropriate. However, this claim is supported only by the bare assertion of Freeman quoted above. It was Freeman's burden as movant, and is his burden as appellant, to show facts sufficient to support his assertion. He has failed to do so. Although an evidentiary hearing on an application for post-conviction relief might establish the pertinent facts, the record on appeal fails to do so. Consequently, we decline to address this question further. We conclude, upon the present record, that the district court did not abuse its discretion by denying Freeman's motion to withdraw his guilty pleas.

■ Freeman next contends that he was denied the right to effective assistance of counsel. The right to counsel in a crimi-

nal prosecution is guaranteed by the sixth amendment of the United States Constitution and by art. I, § 13 of the Idaho Constitution. This guarantee includes the right to effective assistance of counsel. *McMahn v. Richardson,* 397 U.S. 759, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970); *State v. Tucker,* 97 Idaho 4, 539 P.2d 556 (1975). To prevail on this claim defendant must show that his attorney's performance was deficient, and that he was prejudiced because of it. *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *State v. De La Paz,* 106 Idaho 924, 684 P.2d 326 (Ct.App.1984). The attorney's performance must be shown to fall below an objective standard of reasonableness to establish such a deficiency. *Id.* A "strong" presumption that counsel's performance falls within the "wide range of reasonable professional assistance" must be overcome by a defendant in order to prevail. *Strickland v. Washington, supra.* Once a deficient performance is established a defendant must show a reasonable probability that, but for counsel's deficient performance, the result would have been different.

■ Freeman claims that counsel's failure to object to Dr. Farley testifying at the motion hearing represents deficient performance, and that it prejudiced him because the district judge relied on it to determine his plea to be knowing and voluntary. Dr. Farley was present under subpoena by defendant to testify as a mitigation witness at sentencing. At the previous June hearing in chambers of the court when Freeman decided to plead guilty to two counts, Freeman's counsel told the court:

One of the reasons that I had Dr. Farley from the Department of Health and Welfare of the State of Idaho help me in discussing this matter with Mr. Freeman this weekend was to make sure not only in my mind but in Dr. Farley's mind, that he was even competent to realize the rights he would be waiving to make any plea of guilty effective. Dr. Farley has told me that, "Yes, he is, he can make a rational choice." So, it was approached

on that basis. He has also made a rational choice in terms of the ... [count involving the second girl].

A report by Dr. Farley had been furnished to the court as part of the presentence report. Freeman's counsel intended to—and did later—call Dr. Farley to testify at the sentencing hearing. Counsel used Dr. Farley's testimony as a basis for successfully arguing in favor of an indeterminate sentence which would accommodate the goal of rehabilitation. It was the court, not defendant's counsel, who suggested that Dr. Farley testify "as to his observations of the defendant" when the decision to plead guilty was being made. By asking to withdraw his plea at the sentencing hearing, Freeman certainly invited such an inquiry and made it relevant and permissible. Under these circumstances we cannot say that Freeman's counsel was ineffective because he did not object to the testimony of Dr. Farley.

■ Freeman alleges that other conduct of his attorney, regarding the motion to withdraw the pleas, denied him effective assistance of counsel. Particularly, counsel's failure to support the motion. Counsel's conduct is said to be a lack of zealous representation and a blatant disregard for the attorney/client relationship. The record discloses disagreement over tactics between Freeman and his counsel, indecision by Freeman over self-representation, and court intervention over witness decisions, clearly not a solid working relationship. Counsel did not pursue the motion and informed the court that counsel, although instructed to present the motion, personally had no factual basis to support it. Counsel presented no testimony, evidence or oral argument in support of the motion. However, after being advised by his counsel and by the court that he could make a statement or testify himself to supply any information in support of his motion to set aside the pleas, Freeman did testify, answering questions from the prosecutor and from the court. Thus, Freeman was given the opportunity to explain his actions and his state of mind. The record does not disclose what Freeman's counsel should have done further under the circumstances. For all we know from the record, counsel's failure to do more in support of Freeman's motion may have been due to a perceived ethical dilemma.

■ At oral argument on appeal Freeman's appellate counsel suggests that trial counsel's failure to subpoena witnesses constituted ineffective assistance. We have already discussed that trial counsel apparently made a conscious decision not to call certain witnesses which his client might have selected. Freeman's counsel did not feel that they would help the defendant's case. The American Bar Association Standards for Criminal Justice, the Defense Function, Standard 4–5.2(d) (2d ed. 1980) lists the decision over what witnesses to call as being a strategic and tactical decision controlled by counsel. It appears from the record that counsel consulted with Freeman and investigated the usefulness of these witnesses. The failure to subpoena these witnesses is not deficient performance of counsel. Freeman has not contended that counsel's investigation was deficient. We have simply not been shown on this record that counsel's performance was ineffective. *Compare State v. Kelling*, 108 Idaho 716, 701 P.2d 664 (Ct.App.1985). We conclude that Freeman has failed to overcome the strong presumption that counsel exercised reasonable professional judgment.

■ Finally, Freeman argues that the district court abused its discretion in sentencing him to consecutive indeterminate terms of twenty and ten years. Freeman asserts that the sentences were unduly harsh in light of his background. He had been a successful businessman, had served in the military, and had no prior criminal record. Freeman also asserts that the sentences should run concurrently because the violations were committed within a "fairly short period of time." Further, Freeman urges that he suffers from emotional and psychological problems warranting treatment, rather than a long prison sentence.

The district judge rendered a carefully considered sentence on the record. Examining that record in light of the sentence review criteria set forth in *State v. Toohill,* 103 Idaho 565, 650 P.2d 707 (Ct.App.1982), we find no abuse of discretion. The sequence of events led the district judge to rule out the possibility of probation. Freeman was arrested on one count and released. Then within a few weeks, he committed another crime. Also, between the violations Freeman discontinued a voluntary counseling program. While Freeman had no prior criminal record, it was shown that his criminal conduct with minor girls was egregious and ongoing. Protection of the public led the district judge to impose a prison sentence. The judge also considered rehabilitation in his sentence. Lamenting that Idaho has no adequate treatment for sex offenders, the judge recommended to the Board of Correction that Freeman be placed in the medical security unit, and if possible in a foreign state having the appropriate treatment available. Further, the judge, pointing to Freeman's positive qualities, made the sentences indeterminate so that Freeman would have the incentive to seek the help he needs. We affirm the judgment of conviction including the sentences.

WALTERS, C.J., and BURNETT, J., concur.